Diana CALDWELL and John Caldwell, Plaintiffs,

v.

FEDERAL EXPRESS CORPORATION, Thomas Mulhall and William Bruschi, Defendants.

Civ. No. 95–CV–67–B.

United States District Court, D. Maine.

Nov. 29, 1995.

Michael L. Rair, Bangor, Maine, for Plaintiffs.

John W. McCarthy, Rudman & Winchell, Bangor, Maine, Colby S. Morgan Jr., Fedeal Express Corporation, Litigation Legal Department, Memphis, TN, Terrill Elise Pierce, Kaplan & Begy, Chicago, IL, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, Diana Caldwell worked intermittently at the Bangor station of the Federal Express Corporation ("Federal Express") between November, 1989 and December, 1992. She brings this action against Federal Express and its employees, William Bruschi, and Thomas Mulhall for violation of her state and federal rights.

Caldwell filed an eleven count complaint, alleging violation of her federal civil and employment rights under 42 U.S.C. § 2000(e) (Count I), state employment rights under 5 M.R.S.A. § 4572 (Count II), state constitutional rights under 5 M.R.S.A. § 4682 (Count III), the Maine Whistleblower Act, 26 M.R.S.A. §§ 831–840 (Count VI), and her federal and state age discrimination rights under 29 U.S.C. §§ 621–634, and 5 M.R.S.A. §§ 4571–4575, respectively (Count VII). Caldwell also asserts common law claims for intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), breach of implied contract of good faith and fair dealing (Count VIII), libel and slander (Count IX), and negligent failure to supervise employees (Count X). Caldwell's husband, John Caldwell, brings a derivative claim against Federal Express for loss of consortium (Count XI).[1]

Defendants move to dismiss Plaintiff's counts I, II, III, IV, V, VII, VIII, IX, X and XI for failure to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The Court grants this motion in part, and denies it in part.

### I. Motion to Dismiss

▇▇▇ A motion to dismiss is designed to test the legal sufficiency of the complaint, and thus does not require the Court to exam-ine the evidence at issue. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court accepts all well-pleaded facts as true, "indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). The plaintiff, however, must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). The Court need not accept "bald assertions" or "unsubstantiated conclusions." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). "[I]f the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable claim, [the] complaint cannot pass Rule 12(b)(6) muster." *Gooley,* 851 F.2d at 515 (quoting *Sutliff, Inc., v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984)).

### II. Background

Plaintiff, Diana Caldwell worked on a temporary basis as a courier at the Bangor station of Federal Express at various times between November 14, 1989 and December 24, 1992. She expressed interest in more permanent employment to her direct supervisor William V. Bruschi, the Bangor station manager. In response, Caldwell claims that Bruschi promised her a permanent part-time position when one became available. However when such a position did become available, Caldwell's application was denied, despite her seniority and Bruschi's assurances.

Caldwell claims that Federal Express rejected her application because of her age and gender, as well as in retaliation for the charges of sexual harassment she had previously filed with the Maine Human Rights Commission ("MHRC"), and the Equal Employment Opportunity Commission ("EEOC"). Caldwell filed these claims against Thomas Mulhall, the assistant manager of the Bangor station. Caldwell claims that Mulhall sexually harassed her both during and after her employment at Federal Express. Caldwell reported this behavior to

---

1. Defendant Federal Express is named in all Counts except Count IX. Defendants Bruschi and Mulhall are named in Counts I, II, III, IV, VII and IX. Bruschi is also named in Count V.

Bruschi, but no action was taken. Both the MHRC and the EEOC dismissed Caldwell's sexual harassment, gender discrimination and age discrimination charges. Both agencies notified Caldwell of her right to pursue these matters in court.

Diana Caldwell was married to John Caldwell at the time her application to Federal Express was denied.

## III. Discussion

Defendants move for dismissal on various grounds. The Court denies the Defendants' Motion to Dismiss as they relate to Federal Express, except for Counts III (5 M.R.S.A. § 4682), VIII (breach of good faith and fair dealing), and Count X (negligent failure to supervise employees). Plaintiff's common law tort claims, Counts IV, V, IX and XI are dismissed as they relate to the alleged sexual harassment occurring while the Plaintiff was employed at Federal Express, or as they related to her employment discrimination claims under Title VII or the Maine Human Rights Act ("MHRA"). These torts claims remain in the case, however to the extent that they flow from other injuries, such as the sexual harassment allegedly occurring outside the scope of Caldwell's employment. The Court grants Defendant Mulhall's Motion to Dismiss Counts I, II and VII (and dismisses Bruschi from liability under these claims as well).

## A. Constitutional and Statutory Rights

In Count III of the Amended Complaint, Plaintiff claims a violation of her constitutional rights, and seeks relief under 5 M.R.S.A. § 4682.[2] Section 4682 establishes a civil cause of action for any person whose state or federal constitutional or statutory rights have been intentionally interfered with through

actual or threatened violence, damage or destruction of property, or trespass. 5 M.R.S.A. § 4682; see Grenier v. Kennebec County, Me., 748 F.Supp. 908, 913 (D.Me. 1990).

■ Defendants argue that Plaintiff fails to state a claim under § 4682 because Plaintiff's complaint does not plead allegations of physical force or violence, or threat thereof. 5 M.R.S.A. § 4682. While the statute does not explicitly require the use of physical force, a plaintiff must at a minimum identify a threat of force or violence. Plaintiff fails to do so. The Court grants Defendants' Motion to Dismiss Count III.

## B. Common Law Tort Claims

Defendant argues that the Plaintiff's common law tort claims are either, (1) barred by the exclusivity provisions of the Maine Workers' Compensation Act, or (2) preempted by the MHRA, or Title VII.

### 1. Workers' Compensation Act

■ Defendants contend that Plaintiff's alleged injuries occurred at work and are thus barred by the exclusivity provision of the Workers' Compensation Act. This argument ignores key facts at issue, and oversimplifies Plaintiff's claims.

■ The Workers' Compensation Act serves the dual purpose of ensuring injured workers a means of recovery, and providing employers with "absolute but limited and determinate liability." Beverage v. Cumberland Farms Northern, Inc., 502 A.2d 486, 489 (Me.1985) (quoting McKellar v. Clark Equipment Co., 472 A.2d 411, 414 (Me.1984)). The exclusivity provision of the Act bars employees from bringing civil actions against insured employers for work-related injuries. 39–A M.R.S.A. § 104; see also Li v. C.N.

2. While Plaintiff's Amended Complaint cites 5 M.R.S.A. § 4681, Defendant points out, and Plaintiff agrees that § 4682 is the proper vehicle for this cause of action. Section 4682, entitled: "Violations of constitutional rights; civil actions by aggrieved persons," reads in relevant part:
Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence

against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or the laws of the State, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

*Brown Co.*, 645 A.2d 606, 607–608 (Me.1994).[3] Under the Act an employer is liable if the worker, "1) suffers a personal injury, 2) that arises out of and 3) in the course of employment." *Knox v. Combined Ins. Co. of America*, 542 A.2d 363, 366 (Me.1988). Injuries not related to work, that "are a consequence of life in general," are not covered by workers' compensation. *Id.* (quoting *Comeau v. Maine Coastal Services*, 449 A.2d 362, 366 (Me.1982)).

Plaintiff's common law tort claims stem from various distinct incidents and do not all fall clearly within the purview of the Workers' Compensation Act's exclusivity provision.[4] Caldwell's tort claims specifically relate to the alleged employment discrimination and sexual harassment. The Court further distinguishes between these claims by reviewing the sexual harassment allegations during Caldwell's employment separately from those occurring after her tenure at Federal Express.

The Court first addresses the intersection between Caldwell's tort claims arising out of the alleged employment discrimination, and the Workers' Compensation Act. As with all workers' compensation claims, the Court must distinguish between those torts that "arose out of" and "in the course of [plaintiff's] employment" and those that do not. *See* 39 M.R.S.A. § 51; *Comeau*, 449 A.2d at 365–67. This bright line, however, oversimplifies the issue at bar, for not all of the injuries alleged fall within the scope of the Act, even if they arise out of, or in the course of employment. The Court is skeptical as to whether torts based on employment discrimination fall within the ambit of the Workers' Compensation Act. While such torts may be

precluded under the "arose out of" prong, it is equally plausible that they fall outside the purview of the Workers' Compensation Act given the legislative intent of the Act. The Court need not address this issue today because Caldwell does not come within the "in the course of" prong of the statute. Caldwell was not employed by Federal Express at the time of the alleged discrimination, and thus the Workers' Compensation Act is inapplicable. The Court holds that the alleged injuries suffered as a result of employment discrimination did not occur "while and because [the plaintiff was] at work." *Id.* at 366 (citations omitted).

Caldwell worked for Federal Express from November 1989 to December of 1992. She applied for a permanent position, and was rejected, in May of 1993. Caldwell claims that it was in May, 1993 that she was discriminated against on the basis of age and gender, a time at which she was not employed by Federal Express. Thus Caldwell's tort actions for both intentional and negligent infliction of emotional distress (Counts IV and V), libel and slander (Count IX) and negligent failure to supervise (Count X) are not barred under the exclusivity clause of the Workers' Compensation Act to the extent that they related to the Plaintiff's discrimination claims. The Defendants' Motion to Dismiss these claims is therefore denied.

■ Caldwell's tort claims also relate to Mulhall's alleged sexual harassment. Caldwell claims to have been harassed both before and after her employment at Federal Express. Those injuries stemming from harassment at the workplace come within the

**3.** The exclusivity provisions of the Maine Workers' Compensation Act of 1992 reads in relevant part:

An employer who has secured the payment of compensation in conformity with Sections 401 and 407 is exempt from civil actions ... at common law ... involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries. These exemptions from liability apply to all employees, supervisors, officers and directors of the employer for any personal injuries arising out of and in the course of employment, or for death resulting from those injuries.

39–A M.R.S.A. § 104. Although Maine has revised portions of its Workers' Compensation Act over the past several years, the exclusivity provision has remained substantively intact. *See* 39 M.R.S.A. § 4; 39–A M.R.S.A. § 104; *see also C.N. Brown Co.*, 645 A.2d at 607, n. 1. Thus cases interpreting those provisions continue to control.

**4.** At issue are Plaintiff's claims for intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), libel and slander (Count IX), negligent failure to supervise employees (Count X), and loss of consortium (Count XI).

scope of the Workers' Compensation Act and are therefore excluded. *See Knox*, 542 A.2d at 365 (Maine Supreme Judicial Court ruled that as a matter of law employees could recover under the Workers' Compensation Act for injuries, both mental and physical, stemming from sexual harassment.) Such acts do arise out of and in the course of employment. The harassment in question occurred while and because Caldwell was at work, *see Comeau*, 449 A.2d at 366, promoting the interests of her employer, *see Nadeau v. Town of South Berwick*, 412 A.2d 392, 393–94 (Me.1980), and on the premises of Federal Express, *see Babine v. Lane Construction Corp.*, 153 Me. 339, 138 A.2d 625, 627 (1958). "These considerations as well as others do not create a dispositive checklist, rather, they are factors on the scale weighing toward or against a finding that the injury arose out of and in the course of employment." *Comeau*, 449 A.2d at 367.

■ The alleged incidents of sexual harassment occurring outside of work, however, do not fall within the scope of the Act. *Comeau*, 449 A.2d at 368 (incidents not sufficiently work-related do not come within the Act). The Court grants the Defendants' Motion to Dismiss as it relates to any emotional distress, or liability pursuant to negligent failure to supervise employees stemming from sexual harassment occurring within the scope of the Plaintiff's employment at Federal Express, but denies the motion as it relates to emotional distress relating to sexual harassment occurring beyond the scope of Caldwell's employment.

■ The same principles apply to Plaintiff's claim for libel and slander. While the Supreme Judicial Court has not held that libel and slander come within the Workers' Compensation Act, the Court sees no reason why this intentional tort should be distinguished from others. The libel and slander claims that pertain to job-related information will not support a recovery. It is, however, difficult at this stage to determine which statements do, or do not relate to work-related issues. Because the possibility exists from the face of the complaint that the libelous statements in question may concern issues and incidents outside work-related issues, the Court denies Defendants' Motion to dismiss this count at this stage of the proceedings.

## 2. Maine Human Rights Act & Title VII

■ Defendants argue that Plaintiff's emotional distress counts, Count IV and V, stem from the same events as her Title VII and MHRA claims and are therefore barred. While it is true that the Plaintiff would be barred from receiving separate emotional damages for employment discrimination covered by Title VII or the MHRA, it does not follow that the plaintiff is barred from recovering emotional distress damages for injuries distinct from the alleged Title VII and MHRA discrimination. *See Baird v. Haith*, 724 F.Supp. 367, 375 (D.Md.1988) ("[T]o the extent that [the plaintiff] has alleged intentional infliction of emotional distress separate from discrimination, even though the two causes of action arose from the same series of events," the claims will not be dismissed.). For example, Plaintiff may recover such damages that flow from sexual harassment outside the scope of her employment at Federal Express. At this stage in the proceedings the Court is not willing to conclude that Plaintiff could prove no factual theory under which she is entitled to emotional damages, apart from her employment discrimination claim (and the workplace sexual harassment covered by the Workers' Compensation Act).

Given the Court's holding that the torts relating to workplace sexual harassment were covered by the Act, combined with the Title VII and MHRA limitations, the Plaintiff is left with no conduct on which to base her negligent failure to supervise employees claim. The Court thus grants Plaintiff's Motion to Dismiss Count X.

## C. Age Discrimination in Employment Act Claims

■ Defendants argue that Plaintiff's failure to state a claim for age discrimination on her EEOC complaint mandates dismissal of this claim pursuant to the Age Discrimination in Employment Act's ("ADEA") statutory prerequisites. 29 U.S.C. § 626(c). Defendants point specifically to Caldwell's affidavit and EEOC complaint which asserts a

claim for sex discrimination, but does not allege age discrimination. Plaintiff has subsequently submitted to the Court both an affidavit and reports of the MHRC investigation which specifically address the age discrimination charges. The Court holds that Caldwell's age discrimination claims are properly before this Court.

■ The procedural requirement of filing a complaint with the EEOC before initiating a civil claim under the ADEA serves two goals. *See Powers v. Grinnell Corp.*, 915 F.2d 34, 37–38 (1st Cir.1990). First, the agency charge gives formal notice to the employer of the claims at issue. *Id.* Second, the initial complaint provides the agency with the opportunity to investigate and later seek to resolve the dispute before litigation ensues. *Id.* ADEA claims need not be explicitly articulated in the agency complaint to support a civil suit: "[a]n administrative charge is not a blueprint for the litigation to follow." *Id.* at 38; *see EEOC v. General Electric Co.*, 532 F.2d 359, 364 (4th Cir.1976) (quoting *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975)) ("The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation. The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices.' "); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970) ("[T]he purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC.... Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation.").

■ ADEA claims are cognizable "if they are 'like or reasonably related to the allega-tions of the charge and grow[ ] out of such allegations.' " *Powers*, 915 F.2d at 38 (citations omitted). Caldwell's age discrimination claim meets both prongs of this test. It is related to the sex discrimination claim articulated, and it grows out of the same set of circumstances. Caldwell's age claim relates back to the sex claim because it is premised on the same predicate facts. *See e.g., Conroy v. Boston Edison Co.*, 758 F.Supp. 54, 58 (D.Mass.1991) ("Even where the amendment alleges a new protected category, age instead of race in [plaintiff's] case, it will still relate back where the predicate facts underlying each claim are the same.") A claim does not relate back when it pertains to an "entirely new and distinct claim of discrimination." *Id.* (citations omitted). Here the claims relate to the same conduct, and involve the same individuals. *See Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir.1994); *see e.g. Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992) (claims and EEOC charge not related because they do not relate to the same episode of discrimination.)

Caldwell's age discrimination claim falls within the "scope of investigation prong" as well. Courts consider several factors in this analysis, including whether the agency did in fact investigate the alternative grounds at issue, and whether the factual statements in the plaintiff's complaint should have alerted the agency of an alternative claim. *See Conroy*, 758 F.Supp. at 58–59. While an investigator would not necessarily have been alerted to the age discrimination claim on the face of the complaint alone, the MHRC did nonetheless investigate this claim.[5] *Id.* ("In deciding what a reasonable investigation would uncover the fact that a particular type of discrimination was actually investigated has evidentiary value.") Furthermore "[a]llegations outside the body of the charge may be considered when it is clear that the charging

---

5. Some courts have held that age and sex discrimination claims do not necessarily relate back to the same facts. *E.g., Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir.1988); *Rizzo v. WGN Continental Broadcasting Co.*, 601 F.Supp. 132, 135 (N.D.Ill.1985). However it is not clear that in those cases, as here, the agency in question had in fact investigated those alternative theories. Here the fact that the MHRC actually investigated Caldwell's age discrimination claims is crucial to the scope of investigation prong. The MHRC report, dated August 26, 1993, stated that "there are no reasonable grounds to believe that unlawful sex or age discrimination in employment has occurred against Ms. Diana Caldwell by Federal Express."

party intended the agency to investigate the allegations." *Cheek* 31 F.3d at 502. The Court is satisfied that the age discrimination claim comes within the scope of investigation prong. The Defendants' Motion to Dismiss Caldwell's age discrimination claim is denied.

## D.  Good Faith and Fair Dealing

■ Maine has not established a separate cause of action for breach of implied covenant of good faith and fair dealing, and in the absence of a definite statement to this effect this Court will not substitute its own judgment for that of the Maine Supreme Judicial Court or the legislature. *See Renaissance Yacht Company, Inc. v. Stenbeck,* 818 F.Supp. 407, 412 (D.Me.1993). *Top of the Track Associates v. Lewiston Raceways, Inc.* does not bridge this gap. *See* 654 A.2d 1293 (Me.1995). While *Lewiston Raceways* deals with the issue of implied covenants, the Supreme Judicial Court did not definitively establish a cause of action for breach of implied covenant of good faith and fair dealing. *Id.* at 1294–95, 1295 n. 4. Furthermore it is not clear how *Lewiston Raceways* relates to employment contracts.

The holding of *Larrabee v. Penobscot Frozen Foods, Inc.* provides clearer guidance as to employment contracts. 486 A.2d 97 (Me. 1984). There, the court held that a contract of employment for an indefinite period of time can be terminated at will by either party. *Id.* at 99. Maine does not "recognize implied promises in employment contracts of indefinite duration." *Bard v. Bath Iron Works Corp.,* 590 A.2d 152, 156 (Me.1991). The application of *Lewiston Raceways* to employment contracts is therefore dubious. The Court grants Defendants' Motion to Dismiss Count VIII.

## E.  Loss of Consortium

■ A claim for loss of consortium addresses an interference "with the continuance of relations between husband and wife."

*Pelletier v. Fort Kent Golf Club,* 662 A.2d 220, 224 (Me.1995) (quoting *Sawyer v. Bailey,* 413 A.2d 165, 167 (Me.1980). Defendants argue that Plaintiff John Caldwell's loss of consortium claim derives from Plaintiff Diana Caldwell's common law torts, and that the dismissal of the later necessitates dismissal of the former. While Mr. Caldwell's claim is in fact derivative, the Court has denied the Motion to Dismiss Plaintiff's common law claims, and therefore denies the Motion to Dismiss the derivative loss of consortium claim as well.

## F.  Claims against Individual Defendant Thomas Mulhall

■ An individual is not an "employer" for the purposes of Title VII, the ADEA or the MHRA. *Quiron v. L.N. Violette Co, Inc.,* 897 F.Supp. 18, 19–21 (D.Me.1995); *Singer v. Maine,* 865 F.Supp. 19, 23–26 (D.Me.1994).[6] The Court is aware that the Supreme Judicial Court of Maine has not specifically defined an employer under the MHRA. However given the well accepted practice of construing the MHRA in a manner consistent with the prevailing federal caselaw, the Court finds that the MHRA does not impose individual liability. *See Bowen v. Dept. of Human Services,* 606 A.2d 1051, 1053 (Me.1992) ("the use of federal precedent as an aid in interpreting Maine's anti-discrimination provisions is appropriate."); *see also Quiron,* 897 F.Supp. at 20–21 (same); *Singer,* 865 F.Supp. at 26 ("The Maine Legislature 'intended the courts to look to the federal case law to "provide significant guidance in the construction of" ' the Maine Human Rights Act.") (quoting *Percy v. Allen,* 449 A.2d 337, 342 (Me.1982)). The Court grants Defendants' Motion to Dismiss Counts I, II and VII against Mulhall and Bruschi.

## IV.  Conclusion

The standard for a motion to dismiss is indeed rigorous, while the "demands on the

---

6. The Court is cognizant of the contrary authority on this issue. However it endorses the position of the Fourth, *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th), *cert. denied,* — U.S. —, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), Fifth, *Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 574, 130 L.Ed.2d 491 (1993), Ninth, *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587–88 (9th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), and Eleventh Circuits, *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) as to individual liability.

pleader are minimal." *Gooley*, 851 F.2d at 514. While the Plaintiff has met this burden as to some counts, she has not done so as to all counts. For the reasons stated above, it is therefore *ORDERED* as follows:

(1) Defendant Federal Express' Motion to Dismiss is *DENIED* as to Count VII;

(2) Defendants' Motion to Dismiss is *DENIED* as to Plaintiff's common law tort claims, Counts IV, V, IX, and XI, as they related to sexual harassment outside the scope of Plaintiff's employment, or other harms stemming from the alleged incidents; but *GRANTED* as they related to workplace sexual harassment;

(3) Defendant's Motion to Dismiss is *GRANTED* as to Counts IV and V to the extent they relate to damages stemming from Plaintiff's employment discrimination claims covered under Title VII and the MHRA;

(4) Defendants' Motion to Dismiss is *GRANTED* as to Count III, Counts VIII and Count X;

and

(5) Defendant Mulhall's (and Bruschi's) Motion to Dismiss is *GRANTED* as to Counts I, II and VII.