2000 ME 68

Barbara J. GORDAN

v.

Orman F. CUMMINGS, Orman F. Cummings III, and Crest Enterprises, Inc.

Supreme Judicial Court of Maine.

Argued Dec. 7, 1999.
Decided July 25, 2000.

John S. Campbell (orally), Campbell & McArdle, Portland, for plaintiff.

Joseph J. Hahn (orally), Glenn Israel, Bernstein, Shur, Sawyer & Nelson, Portland, for defendants.

Panel: CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

RUDMAN, J.

[¶ 1] Barbara Gordan appeals from a judgment entered in the Superior Court (Cumberland County, *Delahanty, J.*) in favor of Orman F. Cummings, Orman F. Cummings III, and Crest Enterprises, Inc. Mrs. Gordan asserts that the court erred when it granted a judgment as a matter of law in favor of the defendants on her Maine Human Rights Act (MHRA) claim, her intentional infliction of emotional distress claim, and her tortious interference claim. We affirm the judgment.

## I. FACTS

[¶ 2] In 1993, Barbara (Betty) Gordan, her husband, Don, and their son, Rick, owned Gordan's Outboards, Inc., a retail motor boat dealer. Betty managed the operations at Gordan's, and she described the marina as "her home, her life." During the recession of the early 1990's, the family decided to merge its business with another family-operated business that sold motor boats, Crest Enterprises. Orman (Bill) Cummings and his son, Orman (Rick) Cummings III, owned Crest Enterprises, a closely held corporation that owned and operated Sebago Trading Post and Goodall Marine.

[¶ 3] The two sons, Rick Gordan and Rick Cummings, organized the merger and designed the new company's business plan.

Crest, Inc. and Gordan's, Inc. transferred their assets to a new corporation named GG & F, Inc. In return, Crest and Gordan's each received fifty percent of GG & F's capital stock. GG & F had operations in Windham and Raymond, Maine.

[¶ 4] Betty Gordan opposed the merger because she did not want to retire; her husband and son, nevertheless, persuaded her to agree to the merger. When the merger occurred, Bill Cummings became president and CEO of GG & F. Betty Gordan became sales manager and secretary to the Board of Directors; Betty, however, was not a member of the Board.

[¶ 5] After the merger, tensions were high. Betty and Bill would engage in a yelling match at least once a week. Don Gordan testified that Bill did not like Betty and that it was "a personality fight between him and my wife." Bill also yelled at his son. Betty, meanwhile, would frequently engage in screaming matches with her son. Betty and Rick Gordan would argue because Rick would insist that his mother let him run the business. Betty, nonetheless, wanted Rick to do things as she ordered and she wanted him to do them immediately.

[¶ 6] Two or three weeks after the merger, Betty opened the Raymond marina earlier than scheduled and left the Windham location. Bill, Rick and Rick decided to sell the Raymond Marina, even though Betty was operating from that location for GG & F. Bill sent Betty a letter telling her that GG & F was terminating her sales position and that she had until August 7th to remove her belongings. When she had not removed her belongings by September 5th, they entered the Raymond Marina when Betty was not working and changed the locks. When Betty learned of the lockout, she became a self-described "maniac." She telephoned Bill and kept telling him, "call your attorney, call your attorney."

[¶ 7] Betty filed suit against Bill and others (but not her former employer, GG

& F) alleging age and gender discrimination. Conflicting evidence was presented at trial regarding the alleged discrimination. At the close of plaintiff's case, defense counsel moved for a judgment as a matter of law on the following claims: (1) MHRA; (2) intentional infliction of emotional distress; and (3) tortious interference with advantageous relationships. The trial court granted those motions.

[¶ 8] The trial court dismissed the MHRA counts against Rick Cummings and Crest because the evidence did not support such a claim.[1] The court also granted a judgment as a matter of law in favor of Bill on the discrimination claim because it followed federal precedent and interpreted 5 M.R.S.A. § 4553(4) (1989 & Supp.1999) to exclude individual supervisor liability. The court ruled that if Betty was entitled to recover for her intentional infliction of emotional distress claim, such recovery would properly be addressed by the workers' compensation statute. The court concluded that Betty did not present any evidence of fraudulent or intimidating conduct that would interfere with any relationship she had. Betty's fraud and negligent misrepresentation claims proceeded to a jury. The jury found in favor of the Cummingses and Crest.

## II. STANDARD OF REVIEW

[¶ 9] Pursuant to M.R. Civ. P. 50(a), the court may grant a judgment as a matter of law "if the court determines that, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that ... is an essential element of the claim." M.R. Civ. P. 50(a); *see also Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202. To survive a defendant's motion for a judgment as a

matter of law, the "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845 (internal citations omitted). "A judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Id.*

## III. THE MAINE HUMAN RIGHTS ACT

[¶ 10] Betty asserts that the trial court erred when it determined that the definition of employer under the MHRA does not include supervisors acting directly or indirectly for their employer. Although the interpretation of "employer" pursuant to 5 M.R.S.A. § 4553(4) is one of first impression for this Court, we decline to rule upon this issue because Betty's claim against her supervisor is moot. An appeal becomes moot when it loses its controversial vitality. *See International Paper Co. v. United Paperworkers Int'l Union*, 551 A.2d 1356, 1360 (Me.1988). An issue loses its controversial vitality when our decision would not afford the appellant any real or practical relief. *See id.* at 1361. The mootness doctrine preserves the "flexibility of the law by not creating unnecessary precedent." *Graffam v. Wray*, 437 A.2d 627, 631 (Me.1981).

[¶ 11] Even if Betty successfully sued Bill pursuant to the MHRA, she would not be entitled to any remedies. Before a plaintiff with a MHRA claim may recover attorney fees and damages, the plaintiff must establish that she first brought a claim before the Maine Human Rights Commission. *See* 5 M.R.S.A. § 4622 (1989 & Supp.1999) (limiting the award of attorney fees and damages to plaintiffs who first bring their MHRA action before the Commission).[2] Betty failed

---

1. Implicit in this factual finding is the trial court's conclusion that the evidence was sufficient to allow the MHRA claim to proceed against Bill.

2. Section 4622 states:
    1. **Limitation.** Attorney's fees under section 4614 and civil penal damages or compensatory and punitive damages under section 4613 may not be awarded to a plaintiff

to file a complaint with the Maine Human Rights Commission before filing her civil action. Therefore, were she to obtain a judgment against Bill, Betty would be precluded from receiving attorney fees or civil penal damages. *See id.* There are no other remedies pursuant to the MHRA that would apply to an individual defendant. *See* 5 M.R.S.A. § 4613(2)(B) (1989 & Supp.1999). Betty's claim is moot because our decision would not provide her with any effective relief. *See Palesky v. Town of Topsham,* 614 A.2d 1307, 1310 (Me.1992) (finding that appellant's claim was moot because she failed to establish her compliance with 5 M.R.S.A. § 4622 and, therefore, could not be afforded any substantial remedy by the court's decision); *see also Lund v. Pratt,* 308 A.2d 554, 559 (Me.1973) (quoting *Fellows ex rel. Cummings v. Eastman,* 126 Me. 147, 136 A. 810 (1927), and stating that when no damages or fines can be imposed, "the recovery of costs alone is not sufficient to warrant the retention of the case"). Given the mootness of Betty's claim, we decline to needlessly create rigid precedent and will wait until the question of individual liability properly presents itself before deciding this important issue.

## IV. WORKERS' COMPENSATION

[¶ 12] Betty argues that the trial court erred when it removed her intentional infliction of emotional distress (IIED) claim from the jury because her claim arose from a relationship with Bill Cummings and Bill was not strictly her employer but a "joint venturer" as well. Bill asserts that Betty based her IIED claim solely upon workplace conduct and, therefore, the Workers' Compensation Act provides her exclusive remedy. Bill is correct in his assertions.

[¶ 13] The trial court properly granted a judgment as a matter of law because Betty's IIED claim was barred by the Workers' Compensation Act. *See* 39–A M.R.S.A. § 104 (Supp.1999); *Li v. C.N. Brown Co.,* 645 A.2d 606, 609 (Me.1994) (holding that the exclusivity and immunity provisions of the Workers' Compensation Act bar an employee from pursuing civil actions against an employer for the employer's intentional torts); *Reed v. Avian Farms, Inc.,* 941 F.Supp. 10, 13–14 (D.Me. 1996) (concluding that the Maine Workers' Compensation Act precludes IIED claims). The Workers' Compensation Act bars all common law claims that arise out of work-related injuries in the course of employment.[3] *See Li,* 645 A.2d at 608. *But see Caldwell v. Federal Express Corp.,* 908 F.Supp. 29, 33 (D.Me.1995) (allowing IIED claim to proceed against employer because the tortious conduct did not arise while the plaintiff was employed by employer). Betty did not present any evidence to establish that her IIED claim arose from a non-work-related event. Hence, the trial court properly directed a verdict for Bill because the law precludes Betty from bringing an IIED claim in civil court; she must seek redress pursuant to the workers' compensation statute.

in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission and the commission either:

A. Dismissed the case under section 4612, subsection 2;

B. Failed, within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement to which the plaintiff was a party; or

C. Issued a right-to-sue letter under section 4612, subsection 6 and the action was brought by the aggrieved person not more than 2 years after the act of unlawful discrimination of which the complaint was made as provided in section 4613, subsection 2, paragraph C.

5 M.R.S.A. § 4622.

3. We note that the exclusivity provisions of the Workers' Compensation Act do not bar Betty's MHRA claim because 39–A M.R.S.A. § 104 only bars common law actions and certain enumerated statutory claims involving personal injuries and the MHRA is not one of those specifically cited statutes. *See* 39–A M.R.S.A. § 104 (Supp.1999).

## V. TORTIOUS INTERFERENCE

 [¶ 14] Betty asserts that she presented sufficient evidence to establish that the Cummingses and Crest interfered with her relationship with GG & F. To succeed on a tortious interference claim, Betty needed to establish (1) "the existence of a valid contract or prospective economic advantage;" (2) "interference with that contract or advantage through fraud or intimidation;" and (3) "damages proximately caused by the interference." *James v. MacDonald,* 1998 ME 148, ¶ 7, 712 A.2d 1054, 1057.

[¶ 15] Betty failed to establish any interference with her relationship with GG & F that constituted fraud or intimidation. *See id.* The trial court, therefore, properly granted a judgment as a matter of law because Betty failed to establish a prima facie case for each element of her cause of action. *See Champagne,* ¶ 9, 711 A.2d at 845 (noting that the "plaintiff must establish a prima facie case for each element of her cause of action" to survive a judgment as a matter of law).

The entry is:

Judgment affirmed.