Alberta P. GOUGH, Plaintiff,

v.

EASTERN MAINE DEVELOPMENT CORPORATION, et al., Defendants.

No. 01–CV–68–B–S.

United States District Court, D. Maine.

Nov. 26, 2001.

Frank T. McGuire, John W. McCarthy, Rudman & Winchell, Bangor, ME, for Alberta P Gough, plaintiff.

Clare Hudson Payne, Thad B. Zmistowski, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Eastern Maine Development Corporation, David A Cole, defendant.

### ORDER GRANTING MOTION TO DISMISS

SINGAL, District Judge.

Plaintiff filed this action pursuant to state and federal employment discrimination statutes, alleging that her former employer and supervisor discriminated against her on the basis of her depression and related impairments. Presently before the Court is the supervisor's Motion to Dismiss pursuant to Rule 12(b)(6) (Docket # 3). For the reasons discussed below, the Court GRANTS the Defendant's Motion.

### I. STANDARD

The Court may dismiss a claim pursuant to Rule 12(b)(6) only if it appears that, even if all of the allegations in the complaint are true, a plaintiff cannot recover based on any viable legal theory. *See, e.g., Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 48 (1st Cir.2000). Although the Court must construe all of the factual allegations in the Complaint in Plaintiff's favor, *see, e.g., Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990), Defendant has moved to dismiss on a narrow issue of law that requires little or no factual development. Therefore, the Court sets forth the following condensed version of the facts only for the purpose of providing a context for the ensuing legal discussion.

### II. BACKGROUND

Between 1990 and April 1999, Plaintiff Alberta Gough worked for Defendant Eastern Maine Development Corporation ("EMDC") as human resource director and office manager. From 1995 to 1999, Defendant David Cole, the acting president and, later, president of EMDC, supervised Gough.

In 1996, Gough disclosed to Cole that she suffered from depression and related impairments and requested that he reasonably accommodate her disability. She asked that he provide timely and direct feedback about her work so that she would be able to maintain a positive attitude and perform her work duties effectively. Initially, he provided the requested accommodation. In April 1998, however, Cole stopped providing the type of feedback Gough had requested. For several months, Cole did not respond to Gough's repeated requests that he reasonably ac-

commodate her by supervising her in the manner they had discussed. Meanwhile, the two launched into an unfortunate spiral: Cole transferred some of Gough's responsibilities to another employee, which upset Gough and exacerbated her mental condition. This, in turn, negatively impacted her work performance, in response to which Cole reduced her responsibilities further. EMDC eventually placed Gough on probation and ultimately terminated her in April 1999.

Gough filed this action against both Cole and EMDC on April 6, 2001. In Count I of the Complaint, Gough claims that both Defendants violated her rights under the Maine Human Rights Act, 5 M.R.S.A. § 4551 et seq. Counts II and III allege that EMDC violated her rights under the Americans with Disabilities Act, 42 U.S.C. § 12001 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., respectively.

On August 16, 2001, Defendant Cole moved to dismiss Count I, the only claim against him individually, for failure to state a claim upon which relief can be granted. He argues that the Maine Human Rights Act authorizes claims against a discriminating *employer* only and not against a supervisor in his individual capacity.

## III. DISCUSSION

### A. Definition of "Employer" in the MHRA

The Maine Human Rights Act ("MHRA") establishes a cause of action to remedy discrimination in various forms. 5 M.R.S.A. § 4551 et seq. Although codified in a single chapter of the Maine statutes, it contains provisions analogous to a variety of federal antidiscrimination statutes. *See, e.g.,* 42 U.S.C. § 12112 (Americans with Disabilities Act); 5 M.R.S.A. § 4572 (MHRA).

The MHRA makes it illegal for "any employer" to discriminate against an indi-vidual on the basis of a physical or mental disability. 5 M.R.S.A. § 4572(1)(A). Under the MHRA, an "employer" is

> any person in this State employing any number of employees ...; *any person acting in the interest of any employer, directly or indirectly;* and labor organizations, whether or not organized on a religious, fraternal or sectarian basis, with respect to their employment of employees.

5 M.R.S.A. § 4553(4) (emphasis added). The issue presented by the instant motion is whether the phrase "any person acting in the interest of any employer" subjects the employer's agents to individual liability.

### B. State Precedent

 Because the Court's jurisdiction over Plaintiff's MHRA claim is supplemental, *see* 28 U.S.C. § 1367, it must look to the highest court of the state for the proper interpretation of state law. *Doty v. Sewall,* 908 F.2d 1053, 1063 (1st Cir.1990) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In the absence of controlling state court precedent on an issue of state law, a federal court may look to " 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.' " *Michelin Tires Ltd. v. First Nat'l Bank of Boston,* 666 F.2d 673, 682 (1st Cir.1981) (quoting *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.1980)).

As recently as last year, the Maine Law Court expressly declined to rule on whether an employee may hold a supervisor individually liable under the MHRA. *Gordan v. Cummings,* 756 A.2d 942, 944 (Me. 2000). The Law Court has held, however, that the MHRA "was enacted against the background of federal anti-discrimination

statutes and a network of federal cases examining and applying those laws." *Percy v. Allen*, 449 A.2d 337, 342 (Me.1982) (referring to Title VII cases in interpreting the "bona fide occupational qualification" provision of the MHRA). From this, the Law Court concluded that the Maine legislature "intended the courts to look to the federal case law to provide significant guidance in the construction of [the Maine] statute." *Id.* (internal citations omitted). *Accord Bowen v. Dept. of Human Servs.*, 606 A.2d 1051, 1053 (Me.1992) (borrowing from Title VII cases in evaluating a hostile work environment claim under the MHRA).

## C. Federal Precedent

Cases interpreting the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") provide relevant federal precedent. The ADA,[1] Title VII[2] and the ADEA[3] all define "employer" similarly to the MHRA. *See Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir.1999) (noting the similarity of the definitions of "employer" in the three federal statutes). All three federal statutes contain a so-called "agent clause," *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir.1995), that mirrors the "any person acting in the interest of any employer" language in the MHRA's definition of "employer." Cases interpreting these federal statutes are therefore instructive on the issue of wheth-

er individual liability is available under the MHRA.

Every federal Court of Appeals other than the First Circuit has held that the agent clause in the federal statutes only creates respondeat superior liability in the employer and does not subject the employer's agents themselves to liability. *Tomka*, 66 F.3d at 1317 (2d Cir.1995) (Title VII); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (Title VII); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir.1998) (Title VII); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir.1999) (Title VII); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) (Title VII); *Silk v. City of Chicago*, 194 F.3d 788, 797 n. 5 (7th Cir.1999) (ADA and Title VII); *Spencer v. Ripley County State Bank*, 123 F.3d 690, 692 (8th Cir.1997) (Title VII); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993) (Title VII and ADEA); *Butler*, 172 F.3d at 744(ADA); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (Title VII); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995) (Title VII). The First Circuit remains the only Circuit that has declined to rule on whether individual liability exists under the ADA, Title VII or the ADEA. *Oliveras–Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 27 (1st Cir. 2000) (expressly declining to rule on individual liability under the ADA and Rehabilitation Act); *Serapion v. Martinez*, 119 F.3d 982, 992 (1st Cir.1997) (Title VII).

**1.** The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each *working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person ....*" 42 U.S.C. § 12111(5) (emphasis added).

**2.** Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calen-

dar weeks in the current or preceding calendar year, and *any agent of such a person ....*" 42 U.S.C. § 2000e(b) (emphasis added).

**3.** The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar year.... The term also means (1) *any agent of such a person ....*" 29 U.S.C. § 630(b) (emphasis added).

Absent definitive instruction from the First Circuit, courts in this District have followed the other Courts of Appeals and held that the federal statutes do not authorize a cause of action against an individual supervisor. *Martin v. Tennford Weaving Co.*, No. 96–CV–328–P–C, 1997 WL 50469, at *1 (D.Me. Jan.28, 1997) (Title VII); *Caldwell v. Federal Express Corp.*, 908 F.Supp. 29, 36 (D.Me.1995) (Title VII and ADEA); *Quiron v. L.N. Violette Co., Inc.*, 897 F.Supp. 18, 20 (D.Me.1995) (Title VII and ADEA).

 The Court previously has used this body of federal caselaw to guide its interpretation of the MHRA. *See Singer v. State of Maine*, 865 F.Supp. 19, 26 (D.Me. 1994). In fact, the Court has already predicted the Law Court's ruling on the issue of whether individual liability is available under the MHRA. *Caldwell*, 908 F.Supp. at 36; *Quiron*, 897 F.Supp. 18, 20. Pairing the Law Court's instruction to use federal precedent to interpret the MHRA with the overwhelming uniformity among the courts interpreting the federal provisions, the Court concluded that the Law Court would find that individual liability is not available under the state statute either. *Caldwell*, 908 F.Supp. at 36; *Quiron*, 897 F.Supp. at 20.[4] The Court thus has already asked and answered the question of how the Law Court would rule on the issue of state law that Defendant Cole raises here. It is unnecessary to construe the "any person" clause again.

D. New Evidence that the Law Court Would Rule Otherwise

Plaintiff implores the Court not to rely on *Caldwell* and *Quiron*, however. She argues that three changes in the legal landscape that have occurred since the Court decided those cases clearly demonstrate that the Law Court would reach a contrary conclusion if presented with the issue today. The Court must therefore consider whether those three changes, individually or in combination, convincingly demonstrate that the Law Court has changed course since the authorities the Court relied on in *Caldwell* and *Quiron* and would now hold that individual liability exists under the MHRA.

First, on April 19, 2000, the Maine Law Court issued an opinion holding that in contrast to the federal statutes, the MHRA *does* allow for individual liability. *Gordan v. Cummings*, No. CUM–99–254, 2000 WL 419716 (Me. Apr. 19, 2000), *withdrawn*, 756 A.2d 942 (Me.2000). The Law Court observed that the plain meaning of the phrase "any person acting in the interest of any employer" sweeps individual supervisors within the scope of the statute. *Id.* at ¶ 18. Furthermore, certain features of the federal statutes that had prompted federal courts to disregard the plain meaning of the agent clause either were absent from, or differed in significant ways from, the MHRA. *Id.* at ¶¶ 15, 25–27. Based on these differences, the court concluded that the plain meaning of "any person" should prevail and that, in contrast to the federal scheme, individual liability was available under the MHRA. *Id.* at ¶ 28.

Although the Law Court's April 19 opinion in *Gordan* directly addresses the question at issue here, on July 25, 2000, the Law Court withdrew the opinion and substituted a new one. The new opinion states that the issue of individual liability was, in fact, moot at the time of the April

---

4. The First Circuit has also expressed skepticism about whether the MHRA authorizes suits against individuals. *Morrison v. Carleton Woolen Mills*, 108 F.3d 429, 444 (1st Cir.1997) (vacating a trial court's judgment against an individual supervisor "with instructions that, if either party wishes, the court shall reopen, and expressly rule upon, the issue of whether the Maine Human Rights Act provides for individual liability.").

19 decision and expressly declines to decide whether the MHRA allows individual supervisors to be held liable for employment discrimination. *Gordan,* 756 A.2d at 944. Plaintiff argues that in spite of its having been withdrawn, the April 19 opinion nevertheless provides a clear indication of how the Law Court would decide the issue were it presented again on a proper procedural footing.

Plaintiff exaggerates the certainty of the Law Court's position, however. The withdrawn opinion was a 3–2 decision, with a vigorous dissenting argument that there was no reason to distinguish the MHRA from federal precedent. *Gordan,* No. CUM–99–254 at ¶¶ 35–57 (Saufley, J., dissenting). More importantly, whatever its motivation, the Law Court deemed it prudent to withdraw the earlier opinion. This Court respects the Law Court's demonstration that it is not yet prepared to rule on this issue and will not second guess its decision by resurrecting the withdrawn opinion as precedent.

Second, roughly one year after *Gordan,* a bill was proposed in the Maine state legislature that would have stricken the language "any person acting in the interest of any employer, directly or indirectly" from the MHRA's definition of "employer." L.D. 1599, 120th Leg. (Me.2001). The comment accompanying that proposal stated that the amendment sought "to resolve [the uncertainty created by *Gordan* ] by making it clear that employers are the proper parties to hold accountable for employment discrimination, and that a person other than the employer is not personally liable for discrimination." *Id.* The Maine House rejected this bill on June 8, 2001, and the Senate followed suit on June 11.

Plaintiff argues that if the amendment was intended to make clear that there is no individual liability under the MHRA, then *rejection* of that amendment demonstrates that the statute *does* authorize individual liability. Other explanations of the legislature's decision are equally plausible, however. For example, because the first *Gordan* opinion was withdrawn, and no Law Court precedent currently authorizes individual liability under the MHRA, a majority of legislators simply may have deemed revision unnecessary. Moreover, the dissenting justice in the *Gordan* cautioned that misconstruing the MHRA's "any person" clause would "eliminat[e] the statutory basis for agency liability under the Act." *Gordan,* No. CUM–99–254 at ¶ 51. In light of this admonition, many legislators may have been reluctant to excise the "any person" language for fear of throwing the proverbial baby out with the bathwater. In light of these and other competing explanations, the legislature's refusal to change the statute is inconclusive.

Lastly, Plaintiff argues that the Maine Law Court's opinion in *DiCentes v. Michaud,* 719 A.2d 509 (Me.1998), demonstrates the court's willingness to consider individual liability under another provision of the MHRA, namely the Maine Whistleblowers Protection Act, 26 M.R.S.A. §§ 831–840. The Court reads this opinion differently. The trial court in *DiCentes* had entered judgment under the Whistleblowers Protection Act ("WPA") against the principal of a high school and in favor of the school superintendent. *Id.* at 512. On review, the Law Court found that the plaintiff had failed to establish that either the principal's or the superintendent's actions constituted a violation of the WPA and thus ordered judgment in favor of all defendants. There is some ambiguity as to whether the actions of the individual defendants, had they amounted to a violation of the WPA, would have rendered the defendants individually liable or merely would have established a basis for the respondeat superior liability of their employers. The distinction is merely aca-

demic, however, since the Law Court reversed the judgment against the principal and affirmed the judgment in favor of the superintendent in any event. Therefore, *DiCentes* does not support the proposition that the Law Court would find individual liability under the MHRA, especially given that two years later in *Gordan,* it characterized the issue as one of first impression. *Gordan,* 756 A.2d at 944.

In sum, neither a withdrawn opinion of the Law Court, nor ambiguously motivated legislative inaction, nor an opinion decided on grounds independent of the issue presented here, convinces the Court that the Maine Law Court would hold that individual liability is available under the MHRA. Rather, it remains clear to this Court that it is appropriate to use federal precedent to interpret the MHRA. *See, e.g., Bowen,* 606 A.2d at 1053. The Court adheres to its previous assessment that individual liability is not available under the MHRA. *See, e.g., Quiron,* 897 F.Supp. at 21. Defendant Cole is not a proper defendant to this action.

E. Certification to the Law Court

Finally, the Court declines Plaintiff's invitation to certify the question to the Law Court. A federal court may certify an issue of Maine state law to the Law Court when that issue "may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court...." 4 M.R.S.A. § 57. The decision whether to certify lies within the sound discretion of the federal court. *Fischer v. Bar Harbor Banking & Trust Co.,* 857 F.2d 4, 7 (1st Cir.1988).

Certification is not necessary here. Federal precedent answers the question presented, *Martin,* 1997 WL 50469, at *1, and state precedent clearly instructs the Court to follow federal precedent in interpreting the MHRA, *see Bowen,* 606 A.2d

at 1053. Furthermore, based on the allegations in the Complaint, the Court is comfortable that Plaintiff will be able to pursue all her claims fully even if Cole is not a Defendant. The Complaint does not suggest that Cole was acting outside the scope of his employment, nor does it present any independent ground of liability for Defendant EMDC. Therefore, Defendant Cole's liability, even if authorized by the MHRA, would be wholly coextensive with Defendant EMDC's liability, and whether Cole is a proper Defendant or not is not determinative of Plaintiff's claim. *Cf. Doe v. Ketterer,* No. 00–CV–206–B–S, 2001 WL 40912, at *1 (D.Me. Jan.16, 2001) (declining to certify when the issue would not be determinative of a plaintiff's federal claims).

IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant Cole's Motion to Dismiss.

SO ORDERED.