STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL DIVISION
DOCKET NO. CV-16-54

WILLIAM F. GALLAGHER, M.D., )
    Plaintiff, )
    )
v. )
    )
PENOBSCOT COMMUNITY HEALTHCARE, )
ROBERT P. ALLEN, M.D., NOAH NESIN, M.D. )
TERRY WHITE, and LORI DWYER, ESQ., )
    Defendants. )

**ORDER ON DEFENDANTS'**
**MOTION TO DISMISS**

Before the Court is Defendants Penobscot Community Healthcare, Robert Allen, Noah

Nesin, Terry White, and Lori Dwyer's motion to dismiss. Defendants move, pursuant to M.R.

Civ. P. 12(b)(6), to dismiss all claims brought against them in Plaintiff's complaint. Hearing was

held on this matter on November 29, 2016. Having reviewed the parties' filings and their

respective arguments, and for the reasons stated below, Defendants' motion to dismiss is hereby

granted in part, denied in part, and decision is reserved in part.

## BACKGROUND

This action stems from the alleged improper conduct by doctors and staff at Penobscot

Community Healthcare ("PCHC") in connection with the termination of Dr. Gallagher's

employment.[1] The following factual background accepts facts from Plaintiffs' complaint, which

are deemed true when evaluating a motion to dismiss.

---

[1] At all times relevant to this action, PCHC was Dr. Gallagher's employer, and the individual Defendants acted in their managerial capacities and within the course and scope of their employment with PCHC and/or with the authorization of PCHC. (Pl.'s Compl. ¶¶ 12-13.) Dr. Allen was the Executive Medical Director until April 1, 2014; Dr. Nesin has been the Chief Medical Officer since March 2013; Mr. White was the Chief Human Resources Officer until April 2014; and Ms. Dwyer was the General Counsel and Compliance and Risk Officer, and became Chief Human Resources Officer in April 2014. (*Id.* ¶¶ 3-6.) Dr. Gallagher was born in 1935 and at all times relevant to this action was older than 40 years of age. (*Id.* ¶ 7.)

1

Dr. Gallagher, a licensed and board-certified dermatologist, and PCHC entered into a Professional Employment Agreement ("employment contract") on January 25, 2008, whereby Dr. Gallagher agreed to perform professional medical services in return for compensation from PCHC. (Pl.'s Compl. ¶¶ 8, 14-15.) On that same day, Dr. Gallagher entered into an Asset Transfer Agreement ("asset agreement"), in which PCHC acquired Dr. Gallagher's entire private practice. (*Id.* ¶ 16-17.) The employment contract states that employment may be terminated as follows:

> Termination. This Agreement may be terminated by either party without cause upon sixty (60) days advance written notice to the other party.

> Immediate Termination. Notwithstanding any other provision of this Agreement, PCHC may immediately terminate this Agreement in the event that Employee . . . fails to meet what it considers critical terms of the Agreement.

(Ex. A §§ 10.2-10.3.)[2] One of the critical terms of the contract describes the standard of practice expected of the employee under the agreement:

> Standard of Practice. Employee shall retain independent medical judgment and responsibility for the practice of medicine. However, Employee shall comply with procedures which may be established and/or adopted by PCHC to assure the consistency and quality of all services. Physician shall deliver services in a competent and professional manner, consistent with quality assurance and utilization review standards of PCHC . . . .

(*Id.* § 3.)

---

[2] The general rule is that only the facts alleged in the complaint may be considered on a motion to dismiss, and any additional materials presented to the court must either be excluded by the court or the motion shall be converted to a motion for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. However, the court may consider documents that are central to the plaintiff's claim(s) and/or referred to in the complaint without converting the motion to a motion for summary judgment. *Id.* ¶ 11. Here, Defendants attached as Exhibit A the Physician Employment Agreement and the Asset Transfer Agreement, both of which were referenced explicitly in Plaintiff's complaint. (Compl. ¶¶ 15-17.) Additionally, Plaintiff alleges breach of contract, which directly refers to the employment contract. *See Moody*, 2004 ME 20, ¶ 12, 843 A.2d 43 (finding that documents containing the terms of the contract were central to the plaintiff's claim). Therefore, the Court will consider Exhibit A without converting this motion to a motion for summary judgment.

Sometime after Dr. Gallagher joined PCHC, staff complained that he was "old school," among other complaints, and these complaints were investigated by Defendants. (Pl.'s Compl. ¶¶ 19-20.) Plaintiff alleges that PCHC insufficiently investigated staff complaints because the investigation relied on inaccurate complaints and excluded positive information provided by other witnesses. (*Id.* ¶ 20.) Dr. Gallagher protested to Defendants about the insufficiency of their investigation until he was threatened with adverse employment action if he did not cease and desist his own attempts to investigate the complaints. (*Id.* ¶ 22.) Dr. Allen, Executive Medical Director, stated to Dr. Gallagher that the investigation was "not undertaken with intellectual vigor" and told Dr. Gallagher to retire, which he declined to do. (*Id.* ¶ 23-24.) No evidence was uncovered suggesting that Dr. Gallagher's conduct interfered with his ability to provide quality medical care to his patients. (*Id.* ¶ 26.)

Additionally, between 2008 and 2013, at least one patient complained that Dr. Gallagher was elderly, senile, and demented.[3] (*Id.* ¶ 20.) Plaintiff alleges that investigations into patient complaints were mishandled in a similar fashion as the investigations into staff complaints. (*Id.* ¶¶ 31-34.)

On or about June 27, 2013, PCHC suspended Dr. Gallagher from employment effective July 1, 2013, due to staff complaints.[4] (*Id.* ¶ 28.) On or about April 3, 2014, Dr. Gallagher's employment was terminated by PCHC on the basis of patient complaints that were unrelated to age. (*Id.* ¶¶ 31, 45-46.) Plaintiff claims these adverse employment actions were just part of a

---

[3] Additionally, Plaintiff alleges "Dr. Gallagher received 15 complaints over several years" but Plaintiff does not specify the "several years" referenced. (Pl.'s Compl. ¶ 37.)

[4] It is unclear from the complaint when and if Dr. Gallagher's suspension ended prior to his termination. Plaintiff cites adverse employment actions reported to the Maine State Board of Licensure in Medicine on July 15, 2013, October 17, 2013, and April 14, 2014. (Pl.'s Compl. ¶ 52.) The first date is two weeks after Dr. Gallagher's suspension, the second date is not referenced anywhere in the complaint, and the third date is two weeks after Mr. Gallagher was terminated from his employment. (*Id.* ¶¶ 28, 46.) The Maine State Board of Licensure dismissed the complaint after an investigation that included, among other things, evaluation by a neuropsychologist. (*Id.* ¶¶ 53-54.)

3

"continued pattern of willful, illegal, and unjustified adverse treatment and employment action taken against Dr. Gallagher starting as early as 2010." (*Id.*) Specifically, Plaintiff alleges that Dr. Allen chose an arbitrary number of patient complaints—two per year—as a pre-textual basis for taking adverse employment actions against Dr. Gallagher. (*Id.* ¶ 38.) Additionally, Plaintiff alleges that PCHC misrepresented the basis for its employment decision. (*Id.* ¶ 29.)

In December 2012, PCHC advertised to fill a new dermatology position. (*Id.* ¶ 50.) In February 2013, a few months before Dr. Gallagher's employment was suspended, PCHC hired another dermatologist, Elaine Eliezer, to "help [Dr. Gallagher] out" and "to help him change patients' perception of him."[5] (*Id.* ¶ 51.)

Dr. Gallagher alleges that PCHC and the individually named defendants "published oral and written false and defamatory statements about his professional relations with staff and patients, . . . making them known to third parties."[6] (*Id.* ¶ 86.) These statements included the following:

- Dr. Gallagher bullied, intimidated, and verbally and physically abused staff.
- Dr. Gallagher retaliated against staff who complained of his behavior.
- Dr. Gallagher had too many staff and patient complaints and these complaints were substantiated as true and accurate and were serious enough to affect his position at PCHC and his medical license.
- Kenneth Nadeau, PA-C did not trust Dr. Gallagher's clinical judgment.
- Dr. Gallagher mistreated, intimidated, discriminated against, and neglected patients.
- Dr. Gallagher provided patients with care that was inappropriate or otherwise did not meet PCHC's standards.
- Dr. Gallagher misused medical equipment with patients.
- Dr. Gallagher was too old to care for patients and was senile and suffered from dementia during the time he cared for them.

---

[5] Plaintiff's complaint notes these phrases in quotation marks, so the Court puts them in quotation marks for continuity. However, it is unclear who actually said these remarks.

[6] Plaintiff's complaint merely states that Defendants published these statements and made them known to third parties. Plaintiff does not state where these statements were published or what exactly the statements were, instead providing a summary of their content.

4

(*Id.* ¶¶ 87-88.) During Dr. Gallagher's time with PCHC, Defendants made offensive remarks about his age so frequently that it created a hostile or offensive work environment. (*Id.* ¶ 58.) As a result, Dr. Gallagher "has suffered and will continue to suffer severe emotional pain, distress, suffering, mental anguish, loss of enjoyment of life, inconvenience, loss of reputation, loss of past and future income, and other non-pecuniary losses, as well as pecuniary losses and attorney's fees, costs, expenses, and other damages." (*Id.* ¶ 66.)

Plaintiff alleges several claims: (1) age discrimination under the Maine Human Rights Act ("MHRA"), (2) retaliation under the MHRA, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) defamation, (6) injurious falsehood, (7) tortious interference with existing and prospective advantageous economic relations, and (8) breach of contract.

## DISCUSSION

### I. *Legal Standard for Motion to Dismiss*

Dismissal of a complaint is proper only when the complaint fails to state a claim for which relief may be granted. *See* M.R. Civ. P. 12(b)(6). A motion to dismiss tests the legal sufficiency of the complaint, *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217, and is a pure question of law. *Persson v. Dep't of Human Servs.*, 2001 ME 124, ¶ 8, 775 A.2d 363. Generally, to be sufficient, a complaint need only consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741. However, allegations of fraud must be pled with particularity. M.R.Civ.P. 9(b); *Bean v. Cummings*, 2008 ME 18, ¶ 8, 939 A2d 676.

When deciding a motion to dismiss, courts must accept as true all well-pleaded facts in the complaint and construe most favorably to the plaintiff all reasonable inferences that can be drawn from those facts. *McClosky v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). "A dismissal

5

should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted). "At this stage of the proceedings, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005).

## II. *Claims under the Maine Human Rights Act (Counts 1 & 2)*

Plaintiff alleges that Defendants discriminated against him based on his age, and thus violated his rights under the MHRA. Additionally, Plaintiff alleges that Defendants unlawfully retaliated against him.

As a threshold matter, in order for a plaintiff to take advantage of the full array of remedies available under the MHRA, he must exhaust administrative remedies prior to filing a complaint. 5 M.R.S. § 4622 (2011). Section 4622 prohibits a plaintiff from recovering attorney fees, civil penal damages, compensatory damages, or punitive damages unless he "alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the [Maine Human Rights C]ommission" and that the commission has taken some final action on the administrative charge. *Id.*; *see also Gordan v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942.

Dr. Gallagher did not file a complaint with the Maine Human Rights Commission prior to filing the present action. Therefore, his remedies are limited with respect to the MHRA counts.

### A. Individual Defendants

Dr. Gallagher is pursuing both an age-discrimination claim and a retaliation claim under the MHRA. In addition to naming his employer PCHC as a defendant, he has also sued four individual defendants in this action, and seeks relief under the MHRA as to all four of them.

Plaintiff in this case has specified that his employment retaliation claim is brought under 5 M.R.S. § 4633, not under 5 M.R.S. § 4572. (Pl.'s Opp'n to Defs.' Mot. Dismiss 5.) Plaintiff

6

then argues that the wording of § 4633,[7] unlike the wording of the Maine Whistleblowers'

Protection Act ("WPA") [8] and § 4572,[9] prohibits a **"person"** from retaliating, and thus the

*Fuhrmann v. Staples Office Superstore E., Inc.,* 2012 ME 135, 58 A.3d 1083, decision that

individuals cannot be held liable in a retaliation case does not apply to this case.

In *Fuhrmann*, the Court stated that:

> Employers, not employees, have the power and resources to remedy discrimination by implementing anti-discrimination polices, reinstating employees or paying penalties. The remedies and penalties expressly established in the MHRA are indicative of the Legislature's understanding [that holding the employer accountable protects the employee's right to vindication] as [the remedies and penalties] are clearly designed to apply to employers, not individual supervisors.

2012 ME 135, ¶ 33, 58 A.3d 1083 (citations omitted).

The *Fuhrmann* court, after thorough analysis of the MHRA, including its purpose, public

policy, language, and the "context of the whole statutory scheme," reasoned that by holding the

ultimate employer accountable, as opposed to a co-worker employee, the WPA and the MHRA

ensured that the employee's right to vindication is protected. *Id.* ¶ 31. The Court noted:

> The MHRA's express incorporation of vicarious liability and its employer-specific remedies do not signal any intent to hold individual supervisors liable for employment discrimination. If the Legislature had intended to create individual supervisor liability it would have done so explicitly in much clearer terms. In the

---

[7] "A **person** may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under this Act or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this Act." 5 M.R.S. § 4633(1) (emphasis added).

[8] "No **employer** may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:

> A. The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States . . . ."

26 M.R.S. § 833(1)(A) (emphasis added).

[9] "It is unlawful employment discrimination . . . for an **employer**, employment agency or labor organization to discriminate in any manner against individuals because they have opposed a practice that would be a violation of this Act or because they made a charge, testified or assisted in any investigation, proceeding or hearing under this Act." 5 M.R.S. § 4572(1)(E) (emphasis added).

7

absence of any clear indication to that effect, we will not undermine the purpose of these statutes by reading them to provide for individual supervisor liability.

*Id.* ¶ 34 (citations omitted).

The statutory provision relied upon by Plaintiff, § 4633, was enacted as emergency legislation in 1993. Thus, § 4633 was in existence in 2012 when the Law Court decided *Fuhrmann*.[10] For several reasons, it would be inconsistent to prohibit retaliation claims in the employment context against individuals under § 4572(1)(A), yet permit retaliation claims in the employment context against individuals under § 4633. First, in an employment case the conduct at issue under § 4572 and § 4633 would be the same or very similar. Under § 4572(1)(A), an employee who engages in a protected activity (employee reporting employer violation of federal or state law) is protected from retaliation. Under § 4572(1)(E), an employee who opposes a practice that violates the MHRA or who makes a charge, testifies, or assists in any investigation, proceeding, or hearing under the MHRA is protected from retaliation. Similarly, under § 4633, an employee who opposes an act or practice that violates the MHRA or who makes a charge, testifies, assists, or participates in any investigation, proceeding, or hearing under the MHRA is protected from retaliation. Secondly, the remedies for a violation of a § 4572 claim and a § 4633 claim are the same.[11] Finally, federal law does not permit retaliation claims against individuals. *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009) (no individual liability for employees under Title VII).[12]

---

[10] At least two of the Amicus Curiae briefs filed with the Law Court in *Fuhrmann* called attention to the existence of § 4633. *See* Brief for Me. Emp't Lawyers Ass'n at 7, *Fuhrmann*, 2012 ME 135 (No. Yor-11-551); Brief for Me. Human Rights Comm'n at 8, *Fuhrmann*, 2012 ME 135.

[11] The Law Court has held that courts must evaluate WPA retaliation claims within the MHRA framework. *Me. Human Rights Comm'n v. Me. Dep't of Def. & Veterans' Servs.*, 627 A.2d 1005, 1007 n.8 (Me. 1993) (the WPA does not provide a judicial remedy for retaliatory discrimination; the remedies must be pursued through the MHRA).

[12] Maine courts look to federal law when interpreting the MHRA. *Bowen v Dept. of Human Servs.*, 606 A.2d 1051, 1053 (use of federal law as an aid to interpreting Maine's anti-discrimination law is

8

The scope of the analysis in *Fuhrmann* was broad and the decision was not limited. The Court stated: we "conclude that the WPA and the MHRA do not provide for individual supervisor liability." *Fuhrmann*, 2012 ME 135, ¶ 1, 58 A.3d 1083. This Court is satisfied that the MHRA does not permit employment-related claims to be pursued by one employee against other employees. Post-*Fuhrmann*, federal courts that have considered the question of whether the MHRA permits employees to be held liable under the MHRA have interpreted *Fuhrmann* broadly to prohibit any employee liability under the MHRA.[13] *See McLean v. Delhaize Am.*, No. 12-CV-00381-GZS, 2013 U.S. Dist. Lexis 55767 (D. Me. Mar. 27, 2013) (the MHRA does not permit retaliation claims to be pursued against fellow employees, including supervisors); *Doyer v. RSU 16*, No. 14-CV-25-JAW, 2014 U.S. Dist. LEXIS 115327 (D. Me. Apr. 23, 2014) (finding that dismissal of MHRA age discrimination claim *and* MHRA retaliation claim was required because the MHRA does not authorize liability against individuals).

Therefore, Counts I and II are dismissed against Defendants Robert Allen, M.D., Noah Nesin, M.D., Terry White, and Lori Dwyer, Esq. individually for failure to state a claim upon which relief may be granted.

B. Penobscot Community Health Center

The viability of Dr. Gallagher's discrimination and retaliation claims against PCHC are different than the viability of those claims against the individual defendants. Defendants' argument that the claims against PCHC must be dismissed includes an argument about the scope

---

appropriate); *Fuhrmann*, 2012 ME 135, ¶ 27, 58 A.3d 1083 (reference to federal law on interpretation of the MHRA is appropriate, but not determinative).

[13] Pre-*Fuhrmann*, federal courts also held that individuals were not liable under the MHRA. *Gough v. E. Me. Dev'p Corp.*, 172 F. Supp. 2d 221, 223-227 (D. Me. 2001) (noting that the MHRA was enacted against the background of federal anti-discrimination statutes and the network of federal cases applying those laws, the court held that no cause of action existed against a supervisor in his individual capacity under the MHRA); *Caldwell v. Federal Express*, 908 F. Supp. 29, 36 (D. Me. 1995) (MRHA does not impose individual liability).

9

of the remedies to which Dr. Gallagher would be entitled if he were to prevail on these claims. If Dr. Gallagher prevails against PCHC on his age discrimination and retaliation claims, his remedies for Counts I and II would include only those remedies that do not constitute attorney fees, civil penal damages, compensatory damages, or punitive damages.[14] 5 M.R.S. § 4622(1); 5 M.R.S. § 4613(2)(B). There is vigorous dispute between the parties about whether Dr. Gallagher's failure to file a complaint with the MHRC forecloses all meaningful remedies such that he would be left without relief even if he were to prevail on his claims. If he is without meaningful remedies, dismissal is required. *Palesky v Topsham*, 614 A.2d 1307, 1310 (Me. 1992) (a claim is moot if no further recovery is available to a claimant); *Gordon v. Cummings*, 2000 ME 68, ¶ 10, 756 A.2d 942 ("[a]n issue loses its controversial vitality when [the court's] decision would not afford the appellant any real or practical relief"); *Schoendorf v. RTH Mech. Contrs., Inc.*, No. 12-CV-179-GZS, 2012 U.S. Dist. LEXIS 109541, *18 (D. Me. Aug. 6, 2012) (a claim is moot when the plaintiff cannot be afforded any effective relief).

While Dr. Gallagher may be limited in the remedies that could be awarded if he is successful on the liability issues in Counts I and II, the Court is satisfied sufficient remedies exist to deny PCHC's motion to dismiss the MHRA claims on this ground at this time. While reinstatement might be only for a period of 60 days given the termination clause of the agreement, the act of reinstatement and corresponding compensation is sufficient potential relief to preclude granting the motion to dismiss on this basis.[15]

---

[14] "Attorney's fees under section 4614 and civil penal damages or compensatory and punitive damages under section 4613 may not be awarded to a plaintiff in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission . . . ." 5 M.R.S. § 4622(1).

[15] Plaintiff argues that even though he did not file with the MHRC he will still be entitled to back pay, reinstatement, front pay, liquidated damages, nominal damages, pecuniary damages, interest, and other relief, if he prevails on his MHRA claims. (Pl.'s Opp'n to Defs.' Mot. Dismiss 3.) PCHC argues that 5 M.R.S. § 4622(1) clearly provides that compensatory damages are barred when the plaintiff does not file a complaint with the MHRC first, and that any awards intending to compensate a plaintiff for monetary

10

### *i.    Count I: Age Discrimination*

Dr. Gallagher alleges that PCHC terminated his employment based on his age.

The MHRA provides that "[i]t is unlawful employment discrimination . . . to discharge an employee" based on "race or color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin." 5 M.R.S. § 4572(1)(A).

To withstand a motion to dismiss in a case for age discrimination, a plaintiff must present allegations showing the following:

1. the plaintiff was over the age of forty;
2. his work was sufficient to meet his employer's legitimate expectations;
3. his employer took adverse action against him; and
4. the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills.

*Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir. 1991).[16] "This showing gives rise to an inference that the employer discriminated due to the plaintiff's advanced years." *Id.*

Here, Dr. Gallagher has made sufficient allegations of age discrimination against PCHC to withstand the motion to dismiss. At all times relevant to this action, Dr. Gallagher was over the age of forty. Dr. Gallagher alleges that his work was sufficient to meet his employer's legitimate expectations. (*See* Pl.'s Compl. ¶ 27 ("[t]he quality of Dr. Gallagher's patient care was reviewed annually by PCHC and found to be good").) PCHC took adverse action against Dr. Gallagher by suspending him on June 27, 2013, and terminating his employment on April 3, 2014. Finally, Dr. Gallagher alleges that PCHC hired a new dermatologist in February 2013, and that the new hire's credentials were commensurate with his credentials. (*Id.* ¶ 51.) While

---

losses are compensatory damages. (Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Dismiss 2-3.) The Court will not decide this issue at this time.

[16] When interpreting the MHRA, it is appropriate to refer to federal law interpreting the Age Discrimination in Employment Act ("ADEA"). *Me. Human Rights Comm'n v. Auburn*, 408 A.2d 1253, 1261 (Me. 1979); *French v. Bath Iron Works*, 45 F. Supp. 2d 69, 73 (D. Me. 1999).

11

Defendants argue that Dr. Gallagher was not "replaced," the Court is satisfied that the allegation that another dermatologist was hired while Dr. Gallagher was under investigation by PCHC and just a few months before Dr. Gallagher's employment was suspended is sufficient, at this stage of the proceeding, to aver that PCHC had a continuing need for the services of a dermatologist and that Dr. Gallagher was replaced.[17] While Plaintiff has failed to allege the age of his "replacement," given the derogatory age-related statements allegedly made by PCHC through its agents, sufficient allegations have been set forth by the Plaintiff to support the casual connection element of the claim.

Therefore, Defendants' Motion to Dismiss Count I against PCHC is denied.

### ii. *Count II: Retaliation*

Plaintiff alleges that Defendants unlawfully retaliated against him when he objected to Defendants' unlawful age-related discrimination for "protected activity undertaken by him in response to the pretext Defendants offered in order to hide their illegal age discrimination" and "for his objections to Defendants' age-related discrimination and his insistence that the pretext of . . . complaints were illegitimate . . . ." (Pl.'s Compl. ¶ 68, 70.)

To withstand a motion to dismiss in a case for unlawful retaliation in an employment setting under the MRHA, the plaintiff must show the following:

1. the plaintiff engaged in protected conduct (opposed an act or practice that is unlawful under the MHRA or made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the Act);
2. he suffered an adverse employment action; and
3. a causal connection existed between the protected conduct and the adverse action.

---

[17] If the Court were to hold that an employer's hiring of a new employee shortly before taking illegal action against an existing employee could not, as a matter of law, satisfy the requirement that the "employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills," such ruling would merely insulate an employer who carefully planned the illegal action. *See, e.g., Phair v. New Page Corp.*, 708 F. Supp. 2d 57 (D. Me. 2010) (timing of hiring the "replacement" important in a work force reduction case).

12

*Bishop v. Bell Atl. Corp.*, 299 F.3d 53, 58 (1st Cir. 2002).

Before an employer can retaliate against a person for complaining about illegal conduct such as age-related discrimination, the employer must be aware of the complaints. *Stinson v. SimplexGrinnell LP*, 152 F. Appx. 8, *11 (1st Cir. 2005). Moreover, the court should not draw an inference to supply an essential element of a plaintiff's case. *Id.* at *12.

The first question in the analysis must be: what illegal conduct or practice did Plaintiff allegedly report, oppose, protest, or question? Here, Dr. Gallagher alleges that he "protested to Defendants about the insufficiency of the investigation of the merits of staff [and patient] complaints and attempted to investigate the complaints and advocate for himself, until he was ordered by Defendants to cease and desist and was threatened with adverse employment action if he did not comply with that order." (Pl.'s Compl. ¶¶ 22, 33, 69.) Dr. Gallagher then alleges that he was suspended and later terminated "in retaliation for his objections to Defendants' age-related discrimination and his insistence that the pretext of patient and staff complaints against him were illegitimate and required appropriate investigation before Defendants took adverse employment action against him." (*Id.* ¶ 70.)

Similar to the plaintiff in *Stinson*, Plaintiff in this case has failed to allege that he complained to PCHC specifically about age-related discrimination or that such specific complaint(s) were the cause for the adverse employment action. 152 F. Appx. At *12. The Complaint in this case merely states that he protested the sufficiency of the investigation, not that he complained to PCHC about age-related discrimination.

However, unlike the plaintiff in *Stinson*, Plaintiff in this case has not had the opportunity to amend his complaint. The Court grants Plaintiff leave to amend his complaint to state the particular reports/complaints, if any, that he made to PCHC specifically about age-discrimination, including the specific content of the complaint, the person(s) to whom the

13

complaint was made, and the approximate date of the complaint. If Plaintiff fails to allege that he made any particular reports/complaints to PCHC specifically about age-discrimination, the motion to dismiss Count II as to PCHC will be granted.

Therefore, the Court takes no action at this time on Defendants' motion to dismiss Count II against PCHC.

## III. Remaining Claims (Counts III through VIII)

Defendants argue that the remainder of the counts, Counts III through VIII, fail as a matter of law because the MHRA provides the exclusive state remedy for claims arising from alleged age discrimination in employment. Alternatively, Defendants argue that the exclusivity of the Workers' Compensation Act bars all of Plaintiff's tort claims and/or that Plaintiff has failed to adequately allege a cause of action.

Dr. Gallagher's breach of contract claim (Count VIII) is not affected by the MHRA or the Workers' Compensation Act because those statutes apply to the exclusivity of tort claims, not to actions in contract. 39-A M.R.S. § 408 (2017); *see also Li v. C.N. Brown Co.*, 645 A.2d 606, 607 (Me. 1994); *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 155-56 (Me. 1991).

### A. MHRA as the Exclusive State Remedy

In support of their contention that the MHRA provides the exclusive state remedy for employment discrimination, Defendants cite to *Bard* for the proposition that "[w]here a statutory right and remedy are provided, there is no need to recognize a redundant tort." 590 A.2d at 156. However, *Bard* concerns the applicability of the tort of wrongful discharge in an employment discrimination case. *Id.* at 155-56. The Law Court found that the tort of wrongful discharge assumes much of the same conduct as an employment discrimination claim, and therefore would be redundant. *Id.* (holding that "[t]he Whistleblowers' Protection Act embodies a statutory public policy against discharge in retaliation for reporting illegal acts [and] a right to the

14

discharged employee" which would serve to vindicate the same right as the tort of wrongful discharge). Here, the conduct alleged in Counts III through VII relates to conduct that is different from the alleged discriminatory conduct and different rights will be vindicated if Dr. Gallagher is successful.[18] Therefore, as a matter of law, the MHRA does not bar the claims asserted in Counts III through Count VII.

### B. Workers' Compensation Act

"The exclusivity and immunity provisions of the Workers' Compensation Act bar employees from pursuing civil litigation against their employers for injuries incurred in the course of employment." *Li*, 645 A.2d at 607. This bar extends to all torts that seek recovery for mental or physical injuries—even to employers' intentional torts. *Id.* at 608; *Cole v. Chandler*, 2000 ME 104, ¶ 11, 752 A.2d 1189; *Gordan*, 2000 ME, ¶ 13, 756 A.2d 942.

The immunity and exclusivity provisions of the Workers Compensation statute provide:

> An employer . . . is exempt from civil actions, either at common law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18-A, section 2-804, involving **personal injuries** sustained by an employee **arising out of and in the course of employment**, or for death resulting from those injuries. 39-A M.R.S. § 104 (2017) (emphasis added).

> [A]n employee of an employer who has secured the payment of **compensation** as provided in sections 401 to 407 is deemed to have waived the employee's right of action at common law and under section 104 to recover damages for the injuries sustained by the employee. 39-A M.R.S. § 408 (2017) (emphasis added).

There is no dispute that PCHC is covered by the Maine Workers' Compensation Act (WCA).

The torts of defamation, injurious falsehood, and tortious interference with an economic relationship are broad enough to seek the recovery of economic damages. *Cole*, 2000 ME 104, ¶ 13, 752 A.2d 1189 (finding that claims for defamation, invasion of privacy and interference with

---

[18] For example, defamation concerns the right of persons to be free from having harmful false statements published about them. This is a different right than the right to be free from discrimination in the workplace.

advantageous economic relations are broad enough to include recovery for mental and physical injuries). Thus, recovery for economic damages for defamation, injurious falsehood, and tortious interference (Counts V-VII) is not precluded by the exclusivity provision of the Workers' Compensation Act. Defendants' motion to dismiss Counts V-VII of Plaintiff's complaint will not be granted based on the workers compensation exclusivity argument.

On the other hand, claims for intentional and negligent infliction of emotional distress, by their very nature, allege "personal injuries" that seek recovery for mental injury. *See Cole*, 2000 ME 104, 752 A.2d 1189; *Curtis v. Porter*, 2001 ME 158, ¶¶ 18-20, 784 A.2d 18.

C. IIED and NIED

With respect to the emotional distress claims, determination of the motion to dismiss depends on whether the conduct arose out of and in the course of Dr. Gallagher's employment.

A number of Law Court cases have discussed the provision of an "injury arising out of and in the course of employment." In *Fournier v. Aetna*, the Law Court held:

> [T]he term "in the course of" employment relates to the time, place, and circumstances under which an injury occurs, the place where the employee reasonably may be in performance of the employee's duties, and whether it occurred while fulfilling those duties or engaged in something incidental to those duties. We then noted that the term "arising out of" employment means that there must be some causal connection between the conditions under which the employee worked and the injury, or that the injury, in some proximate way, had its origin, its source, or its cause in the employment. We further noted that the employment need not be the sole or predominant causal factor for the injury and that the causative circumstance need not have been foreseen or expected.

2006 ME 71, ¶ 15, 899 A.2d 787 (citations omitted). It is clear that an employee must have been employed by the employer in question at the time of the injury to have the injury "arise out of and in the course of employment." *Cole*, 2000 ME 104, ¶ 9, 752 A.2d 1189; *Comeau v. Me. Coastal Servs.*, 449 A.2d 362 (Me. 1982) (satisfaction of both the "arising out of" and "in the course of" prongs is required for an injury to be compensable under the WCA).

16

To the extent Dr. Gallagher was emotionally harmed by the Defendants' conduct during the course of his employment, such claims are excluded by the WCA.

### i.   IIED

It appears that some allegations in the Complaint allege that Plaintiff suffered emotional distress at the hands of the Defendants not "arising out of or in the course of" his employment. Defendants' conduct after the Plaintiff's employment was terminated is not covered by the WCA. Therefore, the Court examines whether the Plaintiff has adequately pled the elements of the tort of IIED.

To establish the claim of intentional infliction of emotional distress, plaintiff must prove:

1. the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;
2. the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
3. the actions of the defendant caused the plaintiff emotional distress; and
4. the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1991); *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18.

Plaintiff has alleged the necessary elements for a claim of IIED, including, at this stage of the proceeding, sufficient allegations as to the extremeness or outrageousness of the alleged conduct and the severity of the emotional distress. Accordingly, Defendants' motion to dismiss is granted as to Count III alleging intentional infliction of emotional distress for conduct that occurred during the time Dr. Gallagher was employed by PCHC, but is denied to the extent the questioned conduct allegedly occurred after termination of Dr. Gallagher's employment.

### ii.   NIED

With respect to the NIED claim, the plaintiff must establish that:

17

1) the defendant(s) owed a duty to the plaintiff;
2) the defendant(s) breached that duty;
3) the plaintiff was harmed (severe emotional distress); and
4) the breach caused the plaintiff's harm.

*Curtis*, 2001 ME 158, ¶¶ 18-20, 784 A.2d 18. In *Curtis,* the court noted that plaintiffs face significant hurdles in establishing the requisite duty, "in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability. Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others." *Id.*

The question of duty is a legal question, but is also highly fact driven. *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, 118 A.3d 789. "Because it is a mixed question of law and fact, the facts in any given case will determine whether an entity has a duty to the putative plaintiff. This is a multi-factored analysis that necessarily evokes policy-based considerations including the just allocation of loss." *Id.* The Law Court has recognized a duty to avoid causing others emotional harm only in "very limited circumstances" where either there is a bystander liability claim, or "in circumstances in which a special relationship exists between the actor and the person emotionally harmed." *Curtis*, 2001 ME 158, ¶¶ 19, 784 A.2d 18 (a NIED claim may also lie where the actor has committed another tort, but the NIED claim based on another tort is subsumed within the other tort).

Plaintiff has not provided the Court with any citation for the proposition that that an employer/former employer and employee/former employee have the type of special relationship that would impose a duty on an employer to avoid emotional harm to an employee. In his opposition brief, Dr. Gallagher did not provide any citation for his argument that an employer and employee have the type of "special relationship" that would give rise to a NIED claim. (Pl.'s Opp'n to Defs.' Mot. Dismiss.) This lack of citation is particularly telling. Moreover, this

18

Court has not found any Maine case supporting the proposition that employers/former employers owe a tort duty to an employee/former employee to avoid emotional harm to the employee/former employee.[19]

In 2005, the Superior Court found that no "special relationship" existed between a former employee/employer for purposes of imposing a duty on a former employer to avoid emotional harm to the former employee. *Jamison v. OHI*, No. CV-03-569, 2005 Me. Super. LEXIS 161 (Nov. 29, 2005). In 2012, the Superior Court found that no "special relationship" existed between an employer and employee imposing a duty on the employer to avoid causing emotional harm to an employee. *Savage v. Me. Pretrial Servs.*, No. CV-11-326, 2012 Me. Super. LEXIS 26 (Jan. 27, 2012), *aff'd on other grounds*, 2013 ME 9, 58 A.3d 1138. As stated by the Superior Court in *Savage*, "[t]he employer/employee relationship does not evince the same vulnerability as [the physician/patient, funeral home/family, psychotherapist/patient, attorney/client, and adoption agency/adoptive parents] relationships." *Id.* at *13; *see also Berry v. Worldwide Language Res., Inc.*, 716 F. Supp. 2d 34, *51 (D. Me 2010) (employer-employee relationship is not a "special relationship" for purposes of an NIED claim); *Gavrilovic v. WorldWide Language Res., Inc.*, No. 5-38-P-H, 2005 U.S. Dist. LEXIS 32134, *88 (D. Me. Dec. 8, 2005).

---

[19] The only types of relationships that the Law Court has found to satisfy the duty element of NIED are: a physician-patient relationship; a hospital's relationship to the family of a deceased; a psychotherapist-patient relationship; and a relationship between a custodial parent and her child. *See Bryan v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 31, 738 A.2d 839; *Steadman v. Pagels*, 2015 ME 122, ¶ 27, 125 A.3d 713. Additionally, the Superior Court has found that the attorney-client relationship qualifies as a special relationship and that there was sufficient evidence of a special relationship between adoptive parents and an adoption agency to survive a motion to dismiss. *See Grant v. Shanoski*, No. CV-15-363, 2016 Me. Super. LEXIS 113, at *12 (July 7, 2016); *Angelica v. Drummond*, No. CV-02-15, 2003 Me. Super. LEXIS 197, at *28 (Sept. 9, 2003); *Leroy v. Me. Children's Home*, CV-02-125, 2002 Me. Super. Lexis 182, at *6-7 (Me. Super. Ct., Sep. 19, 2002).

The Law Court has declined to recognize a "special relationship" for purposes of NIED in the following circumstances: the relationship between churches and its members; the fiduciary relationship of a foreclosing mortgagee, personal representative, or sole owner of real estate; and the relationship between a customer and pizza delivery person. *See Watchtower Bible*, 1999 ME 144, ¶ 31, 738 A.2d 839; *Oceanic Inn, Inc. v. Sloan's Cove*, 2016 ME 34, ¶ 24, 133 A.3d 1021; *Curtis*, 2001 ME 158, ¶ 21, 784 A.2d 18.

19

This Court finds that the Defendants did not owe a duty to the Plaintiff to avoid negligently causing him emotional harm. Therefore, to the extent Dr. Gallagher was allegedly emotionally harmed by the Defendants' negligent conduct outside the scope and course of his employment, there can be no recovery on a NIED theory, and Defendants' motion to dismiss is granted as to Count IV alleging negligent infliction of emotional distress.

D. Count V: Defamation

To establish a *prima facie* case for defamation, the plaintiff must show:

1. a false and defamatory statement concerning another;
2. an unprivileged publication to a third party;
3. fault amounting at least to negligence on the part of the publisher; and
4. either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447; *see, e.g., Smith v. Heritage Salmon, Inc.*, 180 F. Supp. 2d 208, 221 (D. Me. 2002). Because truth is always a defense, a defendant is "entitled to know precisely what statement is attributed to him [and the court has] always required that the words must be proved strictly as alleged." *Picard v. Brennan*, 307 A.2d 833 (Me. 1973) (the "material words," those essential to the charge, must be proved as alleged). The complaint must allege a particular statement so that the defendant is on notice of the claims against him. *Heritage Salmon*, 180 F. Supp. 2d at 221 (citing *Picard*, 307 A.2d at 834-35) (holding that the defendant in a slander action is entitled to know precisely what statement is attributed to him); *see also Lester v. Powers*, 596 A.2d 65, *68 n.4 (Me. 1991) (holding that the defendant was entitled to summary judgment when the record does not show what statements were made, or when, where, or how they were made).

Dr. Gallagher alleges that PCHC made defamatory statements concerning his job performance, his professional relations with staff and patients, and his claim of age discrimination and retaliation. (Pl.'s Compl. ¶¶ 86-88.) However, in his complaint, Dr.

20

Gallagher provides merely a summarization of the content of these alleged statements. The lack of specificity is compounded by the fact that multiple defendants have been named.

The Court grants Plaintiff leave to amend his complaint to state exactly what statements he alleges were made, by whom they were made, when they were made, and how they were "published . . . making them known to third parties."[20] If Plaintiff fails to amend his complaint in this regard, the motion to dismiss Count V will be granted. Therefore, the Court takes no action at this time on Defendants' motion to dismiss Count V.

E. Count VI: Injurious Falsehood

To establish a *prima facie* case for the tort of injurious falsehood, or slander of title, the plaintiff must show:

1. the publication of a slanderous statement disparaging claimant's title;
2. that was false;
3. made with malice or with reckless disregard of its falsity; and
4. that caused actual or special damages.

*Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). Injurious falsehood requires the showing of a particular statement alleged to be slanderous. *See Picard*, 307 A.2d at 834-35. Here, as above, Dr. Gallagher did not explain what exact statements were made, when they were made, who made them, or how they were published to third parties.

The Court grants Plaintiff leave to amend his complaint to state what statements he alleges were made, by whom they were made, when they were made, and how they were "published . . . making them known to third parties". If Plaintiff fails to amend his complaint in this regard, the Motion to Dismiss Count VI will be granted. Therefore, the Court takes no action at this time on Defendants' motion to dismiss Count VI.

---

[20] This degree of specificity is required because the alleged statements also form the basis for the Interference With a Prospective Economic Damage count.

21

F. Count VII: Tortious Interference with an Economic Relationship

To establish a *prima facie* case for tortious interference with existing and prospective advantageous economic relations ("tortious interference"), the plaintiff must show:

1. that a valid contract or prospective economic advantage existed;
2. that defendant interfered with that contract or advantage through fraud or intimidation; and
3. that such interference proximately caused damages.

*Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400. It appears that Dr. Gallagher alleges tortious interference both through fraud and through intimidation, so these are discussed in turn.

### i. *Interference through Fraud*

The elements of interference through fraud are:

1. making a false representation,
2. of a material fact,
3. with knowledge of its falsity or in reckless disregard of whether it is true or false,
4. for the purpose of inducing another to act or refrain from acting in reliance on it, and
5. the other person justifiably relied on the representation as true and acted upon it to the damage of the Plaintiff.

*Rutland v. Mullen*, 2002 ME 98, ¶ 14, 798 A.2d 1104. Interference of a prospective economic advantage through fraud requires that the plaintiff state the circumstances surrounding the fraud with particularity. M.R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").

FED. R. CIV. P. 9(b) and M.R. Civ. P. 9(b) are substantially similar. Under FED. R. CIV. P. 9(b), a plaintiff must, at a minimum, allege the "time, place, and content of the alleged false representation," or the count is subject to dismissal. *J.S. McCarthy, Co. v. Brausse Diecutting & Converting Equip.*, 340 F.Supp.2d 54, 59 (D. Me. 2004); *see, e.g., Bean v. Cummings*, 2008 ME

22

18, ¶ 11, 939 A.2d 676 ("Where a Maine Rule of Civil Procedure is identical to the comparable federal rule, 'we value constructions and comments on the federal rule as *aids* in construing our parallel provision.'").

Here, to the extent Dr. Gallagher alleges tortious interference through fraud, he has not pleaded with sufficient particularity. Dr. Gallagher states that "Defendants' interference involved making false statements of material fact about staff and patient complaints and Plaintiff's inability to continue his clinical position at PCHC and maintain his medical license . . . ." (Pl.'s Compl. ¶ 104.) Dr. Gallagher never states what exact statements were made, by whom they were made, or when and where they were made.

In addition to the alleged statements lacking the required specificity, the complaint fails to allege the purpose for which the statements were made and whether another person(s) justifiably relied on the statements as true and acted on them to the damage of the Plaintiff.

The Court grants Plaintiff leave to amend his complaint to address the deficiencies noted above. The Court will reserve ruling on this aspect of this Count until after the Plaintiff has had the opportunity to file an amended complaint.

### i. Interference through Intimidation

Interference through intimidation involves unlawful coercion or extortion, which is more than "[m]erely . . . induc[ing] another to leave an employment or to discharge an employee by persuasion or argument." *Perkins v. Pendleton*, 90 Me. 166, 177 (1897); *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d 1104. "[I]ntimidation is not restricted to 'frightening a person for coercive purposes,' but rather exists wherever a defendant has procured a breach of contract by 'making it clear' to the party with which the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff." *Currie*, 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting *Pombriant v. Blue*

23

*Cross/Blue Shield of Me.*, 562 A.2d 656, 659 (Me. 1989)); see also *Currie*, 2007 ME 12, ¶ 31, 915 A.2d 400.

Here, Dr. Gallagher has not alleged—even in a conclusory fashion—any sort of coercion or extortion by PCHC or any of the individual Defendants such that would interfere with Dr. Gallagher's third party contracts and/or relationships. (*See* Pl.'s Compl. ¶¶ 100-06.) Dr. Gallagher simply states that Defendants interfered by "*inducing*, directly and indirectly, third parties to discontinue their contracts . . . ." (*Id.* ¶ 103 (emphasis added).) As discussed in *Perkins*, interference through intimidation requires more than merely inducing another to act in a certain way. 90 Me. 166 at 177.

Plaintiff is also given leave to amend Count VII with respect to his claim of Interference through Intimidation, and the Court will not rule on Defendants' motion to dismiss Count VII at this time.

G. Count VIII: Breach of Contract

Plaintiff alleges that PCHC breached his employment contract by terminating his employment without proper cause and thereby also breaching the Asset Transfer Agreement.

To prevail on a breach of contract claim, the plaintiff must prove: (1) breach of a material contract term, (2) causation, and (3) damages. *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248.

At this stage in the litigation, Dr. Gallagher has made a *prima facie* case for breach of contract against PCHC. Dr. Gallagher alleges that PCHC breached the Physician Employment Agreement by terminating his employment without proper cause. Dr. Gallagher states that there was no proper cause for termination because he met all the critical terms of the agreement. The essence of the contract was the employment relationship, and thus existence of the employment

24

relationship is a material contract term. Dr. Gallagher alleges that this termination directly caused him to suffer economic injuries and damages, along with a list of other damages.

Therefore, PCHC's motion to dismiss is denied as to Count VIII.

## CONCLUSION

To the extent the Court has provided Plaintiff with leave to amend and he wishes to amend, he shall amend his complaint no later than April 10, 2017. To the extent Defendants believe the amended complaint does not remedy the specific issues addressed by the Court in this order, Defendants shall have until April 24, 2017 to renew their motion to dismiss on these discrete points, and Plaintiff shall have until May 1, 2017 to reply.

The entry is:

1. Defendants' Motion to Dismiss is **granted** on Counts I, II, and IV as to Defendants Robert Allen, M.D., Noah Nesin, M.D., Terry White, and Lori Dwyer, Esq.
2. Defendants' Motion to Dismiss Count III is **granted in part and denied in part** as to all Defendants.
3. Defendants' Motion to Dismiss Counts I is **denied** as to PCHC.
4. Defendants' Motion to Dismiss is **granted** on Count IV against PCHC.
5. The Court allows Plaintiff leave to amend his Complaint with respect to Count II against PCHC and Counts V, VI, and VII as to all Defendants, and the Court reserves ruling on Defendants' Motion to Dismiss as to these Counts.
6. Defendant's Motion to Dismiss Count VIII is **denied**.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: March 21, 2017

Ann M. Murray, Justice
Maine Superior Court

25